UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANNON M. LOCKWOOD,

                                        Plaintiff,                  Case # 18-cv-103-FPG

v.                                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

## INTRODUCTION

On April 27, 2014, Plaintiff Shannon M. Lockwood protectively applied for Disability Insurance Benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income Disability under Title XVI of the Act. Tr.[1] 114-15, 177-85. The Social Security Administration ("SSA") denied her claim and Plaintiff, proceeding with counsel, appeared at a hearing before Administrative Law Judge Robert M. Senander ("the ALJ"). Tr. 42-93. On May 19, 2017, the ALJ issued an unfavorable decision. Tr. 11-21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 20, 28. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

## LEGAL STANDARD

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**DISCUSSION**

**I.     The ALJ's Decision**

In conducting the requisite five-step analysis, the ALJ determined that Plaintiff had the following severe impairments: migraine headaches, bilateral occipital neuralgia, cervical myofascial pain syndrome, degenerative disc disease, and interstitial cystitis. Tr. 14. The ALJ did not discuss Plaintiff's polycystic ovary syndrome ("PCOS") or endometriosis.[3] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light and simple work of a routine and repetitive nature, except that she can occasionally climb stairs, stoop, balance, kneel, crouch, and crawl, but can never climb ladders. Tr. 17. Ultimately, the ALJ concluded that there were jobs within the national economy that Plaintiff could perform, thus rendering her not disabled.

**II.    Analysis**

Plaintiff argues that remand is required because the ALJ (1) substituted his own medical judgment for that of a medical professional in formulating the RFC by discounting or rejecting all the medical opinion evidence in the record; (2) improperly analyzed Plaintiff's credibility; and (3) failed to conclude that Plaintiff's endometriosis and PCOS are severe impairments at Step Two. Because the Court agrees with Plaintiff's third argument, it declines to address the other two.

Although Plaintiff bears the burden of proof at Step Two to establish that her impairments are severe, it is not a heavy burden. The Second Circuit has long held that "the standard for a

---

[3] Endometriosis "is an often painful disorder in which tissue similar to the tissue that normally lines the inside of your uterus—the endometrium—grows outside your uterus. Endometriosis most commonly involves your ovaries, fallopian tubes and the tissue lining your pelvis." Mayo Clinic, Endometriosis, https://www.mayoclinic.org/diseases-conditions/endometriosis/symptoms-causes/syc-20354656 (last visited Feb. 21, 2020). "Endometriosis can cause pain—sometimes severe—especially during menstrual periods." *Id.* Polycystic ovary syndrome "is a hormonal disorder common among women of reproductive age" and may result in "infrequent or prolonged menstrual periods" and the development of "small collections of fluid (follicles)." Mayo Clinic, Polycystic ovary syndrome, https://www.mayoclinic.org/diseases-conditions/pcos/symptoms-causes/syc-20353439 (last visited Feb. 21, 2020).

3

finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (1985).

Plaintiff met her burden at Step Two. The medical record is replete with references to Plaintiff's endometriosis and PCOS, with which Plaintiff was diagnosed in 2013. Since then, Plaintiff underwent several surgeries related to her endometriosis, numerous hospitalizations, and many diagnostic tests. Tr. 69. Ultrasounds after her first surgery in 2013 revealed Fallopian Tube and ovary issues consistent with bilateral ovarian follicles, small myometrial cysts, polycystic kidney disease, or ovarian hyperstimulation syndrome. Tr. 297, 541. Plaintiff was again diagnosed with endometriosis in 2014 and her pain was noted as "sharp." Tr. 391, 393. Ultrasounds in 2014 continued to show fibroids and follicles. Tr. 389, 540. A second laparoscopic surgery was performed in 2016 for endometriosis and lysis of adhesions. *See* Tr. 403. Despite this second surgery, an ultrasound in 2016 still showed bilateral ovarian follicles. Tr. 515.

The abdominal pain associated with Plaintiff's conditions is also well-documented in the record. Plaintiff was hospitalized multiple times for pelvic pain. Tr. 544, 553. Plaintiff also testified she is in "constant abdominal pain where I can't even move." Tr. 67. In 2014, Plaintiff's doctor indicated that Plaintiff's "[p]ain has forced her to change her type of work to a less strenuous job." Tr. 276.

Despite the references to Plaintiff's endometriosis and PCOS in the record, the ALJ never mentioned them in his decision. The Commissioner argues that this is not harmful error because

4

the ALJ accounted for Plaintiff's abdominal and pelvic pain by, among other things, concluding that Plaintiff's interstitial cystitis ("IC")—a condition affecting the bladder that may result in urinary frequency, urinary urgency, and pelvic pain[4]—was a severe impairment. The Commissioner is wrong.

The ALJ's error at Step Two was not harmless. Courts in this Circuit employ a specialized harmless error analysis with respect to severity errors at Step Two:

> "[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

*Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

The ALJ here failed to properly consider the effects of Plaintiff's endometriosis and PCOS after Step Two. To be sure, ALJ acknowledged that Plaintiff "has experienced abdominal pain since her first pregnancy, and this has been attributed to several possible diagnoses, one of which is [IC]." Tr. 14. The ALJ purported to credit Plaintiff's testimony "in that she has been subject to a degree of pain and functional limitation during the pertinent period in this case" and therefore limited her to light unskilled work. Tr. 18. But the ALJ also "considered the claimant's allegations

---

[4] Evaluation of Interstitial Cystitis, SSR 02-2P (S.S.A. Nov. 5, 2002) at *5-6. The SSA's rules require ALJs to address the impact of IC and the need to urinate frequently and urgently on a plaintiff's social functioning. SSR 02-2P at *5-6. The ALJ did not make any such findings.

5

and have found them inconsistent with and not well supported by the objective medical findings in the record and therefore not entitled to significant weight." Tr. 19.

It remains unclear from the ALJ's statements—which simultaneously credit and reject Plaintiff's pain, and which never mention her endometriosis or PCOS—whether the ALJ considered and incorporated the abdominal and pelvic pain attributable to those conditions into the RFC. Importantly, IC and endometriosis and PCOS are different impairments that could produce different effects. As the ALJ recognized, IC may result in urinary frequency, incontinence, and urinary urgency. Tr. 14. But Plaintiff's extensive abdominal and pelvic pain stems from her documented endometriosis and PCOS. Moreover, it is not at all clear whether limiting Plaintiff to "light" and "simple" work accounts for Plaintiff's limitations attributable to PCOS and endometriosis. By blurring the impairments together and mislabeling them exclusively as IC, the Court cannot say that the ALJ "fully considered" Plaintiff's endometriosis or PCOS the severity and extent of their effects on Plaintiff into the RFC.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (ECF No. 20) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 28) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 24, 2020
  Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court